**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorain Benear, | No. CV-17-04160-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Lorain Benear's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Doc. 1 at 1–2). This matter has been fully briefed by the parties.[1] The Court now rules on Plaintiff's appeal.

## I.     BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in the Administrative Law Judge's ("ALJ") decision. (*See* Doc 16-3 at 35–51). Accordingly, the Court will reference the background only as necessary to the analysis below.

## II.     LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the

---

[1] (*See* Doc. 24; Doc. 25; Doc. 31).

record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

Furthermore, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194,

196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

###   A.   Definition of a Disability

A claimant can qualify for Social Security disability benefits only if he can show that, among other things, he is disabled. 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

###   B.   The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ next considers whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's residual functional capacity ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1–2).

At step four, the ALJ determines whether, despite his impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the

claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529.

## C.    The ALJ's Evaluation under the Five Step Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 27, 2014, the alleged onset date.[2] (Doc. 16-3 at 39). In step two, the ALJ ascertained that Plaintiff had the following severe impairments: "seizure disorder, degenerative disc disease of the cervical, knee osteoarthritis (mild) and lumbar spine, fibromyalgia and history of lupus." (*Id.*). At this step, the ALJ also found that Plaintiff's left upper extremity fracture, ovarian cyst, status post cerebrovascular accident, heart murmur, tremors, depression, panic disorder, and adjustment disorder were non-severe. (*Id.*). Under the third step, the ALJ determined that the severity of Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of the impairments listed in the Social Security Regulations.

---

[2] Plaintiff's September 6, 2013 Title II application for a period of disability and disability insurance benefits alleged an onset date of January 31, 2013. (Doc. 16-3 at 35). However, at Plaintiff's April 25, 2016 hearing before the ALJ, Plaintiff amended her alleged onset date to January 27, 2014. (*Id.*).

(*Id.* at 42).

Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (*Id.* at 43). The ALJ found that Plaintiff had "the residual functional capacity to perform light work[,]" but restricted her from climbing ladders, ropes or scaffolds, crawling, and driving on the job. (*Id.*). The ALJ also noted that Plaintiff could "occasionally balance," but stated that she "cannot be exposed to dangerous machinery with moving mechanical parts or to unprotected heights that are high or exposed." (*Id.*).

At step four, the ALJ found that Plaintiff could perform past relevant work as a telephone solicitor because this work did "not require the performance of work-related activities precluded by" Plaintiff's RFC. (*Id.* at 50). Consequently, the ALJ did not proceed to the fifth and final step but, rather, concluded that Plaintiff had not been under a disability from January 27, 2014 through June 7, 2016, the date of the ALJ's decision. (*Id.* at 50–51); *see* 20 C.F.R. § 404.1520(a)(4)(iv) (stating that if the claimant can still do her past relevant work, the ALJ will find that she is not disabled).

## III.    ANALYIS

Plaintiff asks that the ALJ's decision be vacated because it is not free of legal error. (Doc. 24 at 2). Specifically, Plaintiff argues that: (1) the ALJ erred in finding no severe mental impairment; (2) the ALJ improperly weighed the opinions of treating physicians Dr. Hayashi, Dr. Hagevik, and Dr. McClain; (3) the ALJ improperly used the opinions of State agency consulting physicians to reject Plaintiff's evidence of disability; and (4) the ALJ's rejection of Plaintiff's symptom testimony is unsupported by clear and convincing evidence. (*Id.* at 14–28). Accordingly, Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits. (*Id.* at 29). In the alternative, Plaintiff asks that the matter be remanded for a new hearing and decision on an open record, "and that the ALJ be advised to allow questioning of State agency physician[s] in accord with 42 U.S.C. § 405(d) and *Richardson v. Perales*, 402 U.S. 389, 397 (1971)." (*Id.* at 30). However, for the reasons set forth below, the final decision of the Commissioner is affirmed.

**A.  Whether the ALJ Erred In Finding No Severe Mental Impairment**

Plaintiff first claims that the ALJ erred by classifying her mental impairments as not severe. (Doc. 24 at 14–19).

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as walking, standing, seeing, hearing, speaking, understanding instructions, use of judgment, responding appropriately to usual work situations, and dealing with changes in a routine work setting. *Id.* § 404.1522(b). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotations and citation omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (An ALJ may find an impairment or combination of impairments "not severe" only if "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.") (internal quotations omitted) (citing SSR 85-28, 1985 WL 56856; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

When the severity of a mental impairment is evaluated at step two, the ALJ first determines whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1).[3] Should the ALJ decide that a claimant has such a medically determinable mental impairment, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment[]" in her written decision. *Id.* §§ 404.1520a(b)(1), (e)(4). Next, the ALJ rates "the degree of functional limitation resulting from the impairment[]" in four broad functional areas: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and

---

[3] This Order refers to the version of 20 C.F.R. § 404.1520a in effect at the time of the ALJ's decision on June 7, 2016.

(iv) episodes of decompensation. *Id.* §§ 404.1520a(b)(2), (c)(3).[4] The degree of functional limitation is based on the extent to which the claimant's impairment interferes with his ability "to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). Finally, after the degree of functional limitation is rated, the ALJ determines the severity of the claimant's mental impairment. *Id.* § 404.1520a(d). The ALJ's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* § 404.1520a(e)(4). If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, it is generally concluded that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

Here, the ALJ comprehensively illustrated why she found Plaintiff's mental impairments to be non-severe at step two of the sequential evaluation after careful consideration of the entire record. (Doc. 16-3 at 39–42). First, the ALJ determined that Plaintiff had medically determinable mental impairments, including depression, panic disorder, and adjustment disorder. (*Id.* at 39). Then, the ALJ examined the medical evidence to determine whether Plaintiff's mental impairments significantly limited her ability to do basic work activities. (*Id.* at 39–42). After evaluating Plaintiff's mental impairments using the technique set forth in 20 C.F.R. § 404.1520a, the ALJ determined that Plaintiff suffered only "mild" limitations in the first three functional areas of activities of daily living, social functioning, and concentration, persistence or pace. (*Id.* at 40). Analyzing the fourth functional area, the ALJ noted that Plaintiff had not experienced any episodes of decompensation of extended duration. (*Id.* at 41). As a result, the ALJ concluded that Plaintiff's mental impairments did not cause more than minimal limitation

---

[4] When rating the categories of daily living, social functioning, and concentration, persistence, or pace, the ALJ uses a five point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When rating episodes of decompensation, the ALJ uses a four-point scale of none, one or two, three, or four or more. *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*

in her ability to perform basic mental work activities and were, therefore, nonsevere. (*Id.* at 39–42); *see* 20 C.F.R. § 404.1520a(d)(1). The ALJ's finding is clearly established by medical evidence and supported by the record. *Webb*, 433 F.3d at 687.

Plaintiff challenges the ALJ's findings using the technique set forth in 20 C.F.R. § 404.1520a, believing the ALJ incorrectly assessed her functioning in the first three functional areas: (i) activities of daily living; (ii) social functioning; and (iii) maintaining concentration, persistence, or pace. (Doc. 24 at 15–17). In the first functional area, activities of daily living, the ALJ cited Plaintiff's Function Report as evidence that Plaintiff could dress herself, bathe, care for her hair, feed herself, shave, and use the toilet. (Doc. 16-3 at 40 (citing Doc. 16-7 at 16)). The ALJ also noted that Plaintiff indicated in her Function Report that she could prepare simple meals, drive independently, did not require reminders to take care of personal needs and grooming, and could "do light household chores such as vacuuming and mopping with help." (*Id.* (citing Doc. 16-7 at 17–18)). Finding that these activities demonstrated that Plaintiff could "independently initiate and participate in activities without supervision or direction," the ALJ concluded that Plaintiff had only mild limitation in activities of daily living. (*Id.*).

Although Plaintiff claims that there are multiple problems with the ALJ's analysis in this first functional area, (*see* Doc. 24 at 15), the Court does not agree. First, Plaintiff contends that the ALJ mischaracterized Plaintiff's answers on her Function Report by citing Plaintiff's "ability to perform chores such as vacuuming and mopping" despite the fact that "these activities were listed in response to a question asking which chores [Plaintiff] needed help doing." (*Id.* (citing Doc. 16-7 at 17)). This argument has no merit, as the ALJ's decision explicitly stated that Plaintiff could "do light household chores such as vacuuming and mopping *with help.*" (Doc. 16-3 at 40 (emphasis added)).

Second, Plaintiff argues that the ALJ erred by relying solely on Plaintiff's Function Report, which was completed almost two months prior to Plaintiff's alleged onset date of January 27, 2014, rather than Plaintiff's hearing testimony that she did not drive, did not go out alone, did not shower alone, needed assistance dressing herself, and needed help

with chores. (Doc. 24 at 15 (citing Doc. 16-3 at 65, 76)). Notably, however, Plaintiff only later amended her alleged onset date from January 31, 2013 to January 27, 2014 at the hearing before the ALJ on April 25, 2016. (Doc. 16-3 at 35). Further, Plaintiff's mental health testimony may have been suspect, as the ALJ noted the possibility of exaggeration in symptoms as suspected by the consultative examiner Robert Mastikian, Psy.D. (Doc. 16-3 at 40 (citing Doc. 16-9 at 29) ("Given her presentation during this evaluation when compared to her prior presentation six months ago, it is my professional opinion that Ms. Benear's symptoms may be dramatically overrepresented and very likely to be exaggerated.")). In addition, the ALJ discussed how Plaintiff's four weeks of vacationing in Hawaii and Alaska were "not necessarily consistent with allegations of disabling cognitive and social impairments" as it suggested a level of functioning consistent with work related tasks. (*Id.*). Accordingly, the ALJ found that this evidence did "not weigh in favor of finding the claimant has cognitive or social symptoms that require finding limitations in the claimant's residual functional capacity." (*Id.* at 41).

Third, Plaintiff believes the ALJ's failure to "mention any relevant findings or statements in the medical evidence, such as [Plaintiff's] tardiness to the first psychological consultative examination or her need for assistance and support from her mother at mental health appointments," is error. (Doc. 24 at 15–16 (citing Doc. 16-8 at 54; Doc. 16-10 at 4, 7)). Although Plaintiff cherry-picks these examples of "relevant findings or statements" which the ALJ did not mention in her final decision, the ALJ did discuss medical evidence when making her findings at step two. (*See* Doc. 16-3 at 41 (stating that Plaintiff "has consistently presented for medical treatment of physical symptoms without evidence of mental distress or psychotic symptoms" and citing numerous medical records from Banner Del Webb Medical Center, Arizona Neurological Institute, Arizona Pain Specialists, Banner Health Center, and FastMed Urgent Care)). Furthermore, the ALJ's findings as to the first functional area are supported by the opinion of Dr. King, a state agency consulting physician who found that Plaintiff had no restriction in activities of daily living. (Doc. 16-4 at 7).

Fourth, Plaintiff claims the ALJ erred in assessing the first functional area by failing to explain "how the cited list of activities purportedly corresponds to a mild limitation in daily activities." (Doc. 24 at 16). According to Plaintiff, the ALJ, instead, "simply lists the activities and asserts that they are consistent with mild limitations." (*Id.*). This argument fails, as the ALJ's decision did, indeed, explain how the activities Plaintiff participated in correspond to a mild limitation in the first functional area. Specifically, the ALJ stated that these activities demonstrated that Plaintiff was "able to independently initiate and participate in activities without supervision or direction and, therefore, . . . would not support a finding of greater limitation in this area of function." (Doc. 16-3 at 40). This analysis is consistent with the Social Security Regulations. *See Louis v. Astrue*, No. 1:10-CV-00656-SMS, 2011 WL 3568822, at *18 (E.D. Cal. Aug. 12, 2011) (citing 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.03(B), which notes that ALJs assess "the extent to which [the claimant] [is] capable of initiating and participating in activities independent of supervision or direction"). Accordingly, the Court does not believe that the ALJ incorrectly assessed Plaintiff's functioning in activities of daily living.

In the second functional area, social functioning, the ALJ determined that Plaintiff had mild limitation. (Doc. 16-3 at 40). Plaintiff contends that the ALJ erred in its analysis of Plaintiff's social functioning by only citing Plaintiff's ability to interact appropriately with physical consultative examiner Dr. Briggs. (Doc. 24 at 16 (citing Doc. 16-3 at 40)). While the ALJ did cite Dr. Brigg's medical opinion as support for her statement that Plaintiff "interacted appropriately at the consultative examination," the ALJ also noted than an examination of the record did not reveal any "evidence of a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships or personal isolation." (Doc. 16-3 at 40; *see also* Doc. 16-8 at 48–53). The ALJ's findings as to the second functional area are also consistent with the opinion of Dr. King, who also found that Plaintiff had only mild difficulties in maintaining social functioning. (Doc. 16-4 at 7; *see also* Doc. 16-3 at 41 (stating that significant weight was afforded to the opinion of Dr. King because this opinion was "consistent with and supported by the evidence")).

In an effort to demonstrate that the ALJ erred in finding Plaintiff had only mild limitation in social functioning, Plaintiff also points to various portions of the record which the ALJ did not discuss in her analysis under the second functional area. Specifically, Plaintiff refers to notations in the record of her nervous, anxious, depressed, or dysphoric mood, as well as the opinion of consultative psychologist Dr. Littleton that such mood and anxiety symptoms may render it difficult for Plaintiff to respond to supervisory criticism. (Doc. 24 at 16–17 (citing Doc. 16-8 at 49, 54, 58; Doc. 16-9 at 38, 45, 53; Doc. 16-10 at 8)). Plaintiff also mentions her hearing testimony that she had no friends, an inability to handle criticism, and a tendency to isolate herself when crying. (*Id.* at 17 (citing Doc. 16-3 at 72–73)). However, the ALJ found that physicians consistently noted that Plaintiff "was cooperative with appropriate mood and affect" and did not have "psychiatric symptoms that would suggest limitation is required[.]" (Doc. 16-3 at 41 (citing Doc. 16-8 at 110–11, 162, 165, 168, 170, 180, 182, 188; Doc. 16-9 at 7, 15, 93, 100, 105, 112, 118, 123, 130, 174, 179, 185; Doc. 16-10 at 26, 87–89, 97–98, 110, 112)). Although Plaintiff might be able to point to evidence supporting her belief that she had greater limitations in social functioning than that found by the ALJ, this does not establish error. Rather, "[w]here evidence is susceptible to more than one rational interpretation," as it is here, "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews*, 53 F.3d at 1039–40); *see also Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."). As a result, the Court does not find that the ALJ incorrectly assessed the area of social functioning.

In the third functional area—concentration, persistence, and pace—the ALJ also determined that Plaintiff had mild limitation after reviewing the results of Plaintiff's initial mental consultative examination with Dr. Littlefield, Psy.D. (Doc. 16-3 at 40). The ALJ indicated that Plaintiff received a score within the normal range after spelling a five letter word correctly, making three correct calculations with serial 7's, recalling words, following a three-step command, writing a complete sentence, drawing a complicated diagram, and

correctly identifying the date and general location of the appointment with Dr. Littlefield. (*Id.*). Although Plaintiff asserts that the ALJ made "no attempt to explain how the doctor's observations . . . equate to mild limitations in this area," (Doc. 24 at 17), the ALJ stated that Plaintiff's capability to complete these tasks suggested "an ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks," (Doc. 16-3 at 40).[5] Accordingly, the Court does not believe that the ALJ incorrectly assessed Plaintiff's functioning in the area of concentration, persistence, and pace.[6]

    Plaintiff also takes error with the ALJ's statement that she "considered the

[5] As when presenting her complaints regarding the ALJ's analysis in the second functional area, Plaintiff again refers to additional evidence—including what she claims are poor scores on the mini mental status examinations and hearing testimony that "she stopped working due to an inability to keep up with the work pace, learn new tasks, or refrain from becoming 'mixed up'"—in support of her belief that the ALJ erred in analyzing the third functional area. (Doc. 24 at 17). Nevertheless, this hearing testimony that Plaintiff refers to does not exist. Plaintiff cites "Tr. 62, 64", which refers to pages 63 and 65 of Doc. 16-3. While these pages are, indeed, portions of Plaintiff's hearing transcript, Plaintiff nowhere states that "she stopped working due to an inability to keep up with the work pace, learn new tasks, or refrain from becoming 'mixed up,'" or even anything remotely similar to this alleged testimony. (*See* Doc. 16-3 at 63, 65). Likewise, Plaintiff cites to the mini mental status examination ("MMSE") completed by Dr. Littlefield as evidence that she "scored poorly," but she received a score of 26 out of 30, which Dr. Littlefield stated was "in the normal range." (Doc. 16-8 at 56; Doc. 24 at 17). Additionally, Plaintiff refers to the mini mental status examination completed by Dr. Mastikian in which she received a score of 19 out of 30 as evidence that her poor score reflects "significant cognitive dysfunction." (Doc. 24 at 17 (citing Doc. 16-9 at 28–29)). Nevertheless, Dr. Mastikian explicitly noted that Plaintiff "appeared as though she was not providing a full effort on this MMSE this time around" and made detailed findings as to the likely possibility that Plaintiff was exaggerating her symptoms. (Doc. 16-9 at 28–29). Even if one were to interpret this "evidence" in such a way as to believe it is indicative of a greater limitation in the third functional area—which the Court does not—the evidence also supports the ALJ's conclusion and, accordingly, we must defer to the ALJ's decision. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews*, 53 F.3d at 1039–40).

[6] In her Reply, Plaintiff also asserts, without citation, that the ALJ's reliance on Plaintiff's mini mental status examination is inappropriate because an MMSE is a "test that screens for Alzheimer's, an impairment not suffered by Benear," and because an MMSE "does not demonstrate a lack of concentration deficits due to depression and anxiety." (Doc. 31 at 4). Nevertheless, MMSEs are consistently used to evaluate the concentration, persistence, and pace of claimants' mental impairments. *See, e.g.*, *Clark v. Berryhill*, No. 16-CV-2854-BEN-AGS, 2018 WL 620144, at *2 (S.D. Cal. Jan. 29, 2018) (stating that the ALJ "properly focused on the mental status examinations" when examining the claimant's mental health evidence in the functional area of concentration, persistence, or pace); *see also Pounds v. Astrue*, 772 F. Supp. 2d 713, 729 (W.D. Pa. 2011) ("Limitations in concentration, persistence, or pace . . . can often be assessed through clinical examination or psychological testing.") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00)).

possibility of exaggeration in symptoms as suspected by the consultative examiner Robert Mastikian, Psy.D.," because Plaintiff claims that the ALJ did "not actually evaluate the plausibility of the examiner's claim or state how this impacted the analysis of [Plaintiff's] mental impairments." (Doc. 16-3 at 40; Doc. 24 at 17). However, Plaintiff's argument here is baseless, as the ALJ extensively discussed why she afforded Dr. Mastikian's opinion significant weight in her final decision. (*See* Doc. 16-3 at 41). Particularly, the ALJ considered how Dr. Mastikian "detected a possibility of exaggeration of symptoms" which aligned with the ALJ's findings that Plaintiff "consistently presented for medical treatment of physical symptoms without evidence of mental distress or psychotic symptoms." (*Id.*). While it is true that "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental health conditions such that an ALJ may not discount attestations of impairment "merely because symptoms wax and wane in the course of treatment," *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), the ALJ acknowledged this and gave 29 examples from the record spanning from October 2013 through November 2015 consistently demonstrating Plaintiff's absence of psychiatric symptoms over that time frame, (Doc. 16-3 at 41 (citing Doc. 16-8 at 110–11, 162, 165, 168, 170, 180, 182, 188; Doc. 16-9 at 7, 15, 93, 100, 105, 112, 118, 123, 130, 174, 179, 185; Doc. 16-10 at 26, 87–89, 97–98, 110, 112)).[7] Appropriately, the ALJ determined that Dr. Mastikian's opinion was "consistent with and supported by the evidence." (*Id.*).[8]

---

[7] The examples cited by the ALJ include appointments in October 2013, January 2014, May 2014, August 2014, September 2014, October 2014, November 2014, December 2014, January 2015, February 2015, May 2015, September 2015, and November 2015. (*See id.*). Plaintiff saw at least nine different medical professionals at these visits. (*Id.*). These physicians noted that Plaintiff was cooperative, had appropriate mood and affect, and indicated the absence of psychiatric symptoms. (*Id.*).

[8] Plaintiff also argues that Dr. Mastikian's "explained basis for his suspicions" that Plaintiff was exaggerating her symptoms are "largely not legitimate." (Doc. 24 at 17). Specifically, in response to Dr. Mastikian's statement that Plaintiff's Function Report "appears as if it was written by two different people based on the changes in handwriting," (Doc. 16-9 at 29), Plaintiff states that her "review of the report shows that the *vast majority* is clearly one handwriting," (Doc. 24 at 17) (emphasis added). This is essentially an admission that at least a portion of Plaintiff's Function Report was completed by two different people. Therefore, it appears that Dr. Mastikian's statement that "[i]t appears as if one person answered the question and had another person add on information after the fact, which makes the document and everything included in it suspect," (Doc. 16-9 at 29), is, indeed, legitimate. (*See* Doc. 16-7 at 53–54, 57) (portions of Plaintiff's July 8, 2014 Function

- 14 -

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff's cruise vacation during the adjudicatory period was not necessarily consistent with Plaintiff's allegations of disabling cognitive and social impairments. (Doc. 24 at 18 (citing Doc. 16-3 at 40–41)). Specifically, Plaintiff takes error with the ALJ's assertion that a cruise ship is a "confined vessel full of strangers." (*Id.*). According to Plaintiff, the ALJ's description of cruise ships as "confined" spaces is "inaccurate" because "cruise ships are massive, spacious vessels." (Doc. 24 at 18). However, in light of Merriam-Webster's definition of "confined" as "limited to a particular location,"[9] it is not inappropriate to describe a cruise ship in this manner as a cruise ship is, indeed, bounded in area.

Plaintiff also claims that the ALJ failed to consider Plaintiff's "testimony that she participated in cruise activities 'where there's not a whole lot of people.'" (*Id.* (citing Doc. 16-2 at 65)). However, Plaintiff misrepresents her hearing testimony. Rather, in response to the ALJ's question of what she did on the cruise, Plaintiff stated that she would "lounge," "watch the water," and that "sometimes they had a show and they had a place where you could, could [sic] go where there's not a whole lot of people and, and [sic] you could sit and, and [sic] watch it." (Doc. 16-2 at 65). Plaintiff does not state that she "participated in cruise activities 'where there's not a whole lot of people,'" as Plaintiff claims, but instead described the show she attended (which was in addition to other activities she participated in) as an environment "where there's not a whole lot of people." (Doc. 16-2 at 65; Doc. 24 at 18).

Further, Plaintiff claims that the ALJ erred by failing to "distinguish between the

Report seemingly showing variations in handwriting). Regarding Dr. Mastikian's comment that Plaintiff "claimed to have a significant amount of medical problems, yet there was no evidence in the documentation to provide truth to her claims," (Doc. 16-9 at 29), Plaintiff states that it "is unclear how the doctor can make such a strong claim when he was not provided any medical records, mental or physical, by the State Agency," (Doc. 24 at 18). Nevertheless, this was just one of multiple inconsistencies noted by Dr. Mastikian when evaluating Plaintiff's credibility and consistency. (*See* Doc. 16-9 at 29). Further, Dr. Mastikian's findings of inconsistencies were based on the information Plaintiff provided "when compared to information included in the records and her presentation." (*Id.*).

[9] *Confined*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/confined (last visited Jan. 3, 2018).

mere presence of other people and Benear's actual interactions with others on the cruise" because the "only activities she testified to on the ship were solitary and did not require interacting with other guests." (Doc. 24 at 18). While Plaintiff characterizes all of her activities on vacation as "solitary," it is dubious that Plaintiff did not interact with any other individuals during the entirety of her vacation. Accordingly, the Court does not believe this argument proves that the ALJ erred in describing a cruise ship as a "confined vessel full of strangers" nor deprive the ALJ's decision of substantial evidence.

Finally, Plaintiff argues that the ALJ "makes no attempt to explain how the ability to be near other people on a large ship relates at all to potential limitations in interacting with supervisors" despite Dr. Littlefield's finding that Plaintiff's "primary social limitation involved difficulty handling criticism from supervisors, a scenario which is irrelevant to a cruise." (*Id.* at 18–19). Nevertheless, this argument misses the mark, as a claimant's response to supervisory criticism is just one factor which may be considered in the area of social functioning. Indeed, the Social Security Administration's regulations define "social functioning," in part, as one's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals"—not just supervisors. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2) (Mental Disorders, Assessment of Severity). Although Dr. Littlefield did state that Plaintiff "may have difficulty responding to supervisory criticism," he also found that Plaintiff "demonstrated good ability to relate to and interact with others in an appropriate manner" and indicated that he believed she would be able to do so in a work setting. (Doc. 16-8 at 58). Further, the ALJ afforded significant weight to Dr. Littlefield's opinion after finding it was consistent with and supported by the evidence. (Doc. 16-3 at 41). Accordingly, the Court does not believe that the ALJ erred in finding that Plaintiff's travel was inconsistent with her "allegations of disabling cognitive and social impairments" nor in determining that her ability to travel suggested "a level of function consistent with work related tasks." (*Id.* at 40).

In conclusion, substantial evidence supports the ALJ's finding at step two that Plaintiff's mental impairments were non-severe. Moreover, even if the ALJ should have

found Plaintiff's mental impairment to be severe, such an error is harmless as "it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Feild v. Colvin*, No. CV-12-00330-TUC-BPV, 2013 WL 4525198, at *8 (D. Ariz. Aug. 27, 2013) ("Error in a step two determination that some impairments are nonsevere is harmless when the ALJ determines that other impairments are severe and proceeds through the sequential evaluation considering the allegations of functional limitations imposed by non-severe impairments."). Despite finding that Plaintiff's medically determinable mental conditions were non-severe, the ALJ found that Plaintiff had other severe physical impairments at step two and continued with the sequential evaluation. (Doc. 16-3 at 39).

**B.     Whether the ALJ Properly Weighed the Opinions of Drs. Hayashi, Hagevik, and McClain**

Plaintiff next argues that the ALJ erred when weighing the opinions of Drs. Hayashi, Hagevik, and McClain—three of Plaintiff's treating physicians. (Doc. 24 at 19).

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant.

*Lester*, 81 F.3d at 830. Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

When evaluating Plaintiff's impairments, the ALJ afforded little weight to the opinions of Drs. Hayashi, Hagevik, and McClain, which were contradicted by the opinions of Drs. Briggs, Ostroski, and Bird. (Doc. 16-3 at 47–49). For the reasons set forth below, the Court finds that the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for assigning little weight to the opinions of Drs. Hayashi, Hagevik, and McClain. *Ryan*, 528 F.3d at 1198.

### 1. The Opinion of Dr. Hayashi

Plaintiff claims that the ALJ erred in discounting the opinions of treating family practitioner Dr. Hayashi. (Doc. 24 at 20). Although the Court agrees that some of the justifications provided by the ALJ for discounting Dr. Hayashi's opinions were not

"specific and legitimate reasons supported by substantial evidence," this error was harmless, as the ALJ provided other, specific and legitimate reasons based on substantial evidence for discounting Dr. Hayashi's opinions. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054–55 (9th Cir. 2006); *see also DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 176 (9th Cir. 2009) (ALJ's error in using his personal conclusion regarding one physician's deviation from accepted medical practice as a factor in rejecting that physician's opinion as unreliable was harmless because the ALJ "gave several specific and legitimate other reasons supported by substantial evidence" for rejecting that physician's opinion that claimant was disabled) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); *Bartels v. Colvin*, No. CV 15-5144-AFM, 2016 WL 768851, at *4 (C.D. Cal. Jan. 29, 2016) (affirming the ALJ's decision denying social security benefits even though the ALJ erred in discrediting a treating psychologist's opinions based on a purported lack of cognitive testing results because the error was harmless since the ALJ presented an independent, specific and legitimate reason supported by substantial evidence for giving little weight to the opinions of that treating psychologist). Accordingly, even if some of the justifications provided by the ALJ for discounting Dr. Hayashi's opinions were erroneous, the ALJ's error did not materially impact her decision and the conclusion of no disability would not change. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In affording little weight to the statements of Dr. Hayashi, the ALJ first found that the "opinions limiting the claimant to less than sedentary work are inconsistent with and unsupported by the medical evidence." (Doc. 16-3 at 48). Notably, inconsistency between a physician's opinion and a claimant's medical records constitutes a "specific and legitimate reason" for rejecting the opinion of that treating physician. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ reasonably discounted the opinion of a treating physician because the medical records did not support the limitations the physician set forth in her opinions); *see also Valentine*, 574 F.3d at 692–93 (holding that the ALJ sufficiently justified its rejection of a treating psychologist's

contradicted testimony because it conflicted with the psychologist's own treatment notes).

Here, however, Plaintiff argues that Dr. Hayashi's opinions "were not inconsistent with or unsupported by the objective evidence." (Doc. 31 at 5; *see also* Doc. 24 at 20). In contrast to the evidence cited by the ALJ, Plaintiff points to evidence which she believes supports Dr. Hayashi's opinions.[10] (*See* Doc. 24 at 20; Doc. 31 at 5–6). Nevertheless, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. While it is true that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence,'" *Ryan*, 528 F.3d at 1198, consideration of the entire record reveals that substantial evidence supports the ALJ's statement that Dr. Hayashi's opinions "are inconsistent with and unsupported by the medical evidence," (Doc. 16-3 at 48).

Despite Plaintiff's contention that the ALJ did not explain how the medical records failed to support Dr. Hayashi's opinion, (Doc. 24 at 20), the ALJ specifically stated that Dr. Hayashi's opinion limiting Plaintiff to less than sedentary work conflicted with his own treatment notes, which reflected that Plaintiff "primarily presented for refills on pain medication" and "consistently commented" that Plaintiff was "well-appearing." (Doc. 16-3 at 48). Although Plaintiff claims that Dr. Hayashi's comment that Plaintiff was "well-appearing" was merely "an initial impression and does not equate to a patient lacking debilitating symptoms or conditions," (Doc. 24 at 20), an examination of the medical records cited by the ALJ demonstrates that Dr. Hayashi consistently found that Plaintiff was "well-appearing" during his exams of Plaintiff. (*See* Doc. 16-10 at 52, 55, 58, 61, 64, 67).[11] Moreover, the ALJ noted that the clinical findings in Dr. Hayashi's records did "not support the severe degree of limitations in the opinions." (Doc. 16-3 at 48–49 (citing Doc. 16-10 at 46, 51, 58)). Although Dr. Hayashi opined that Plaintiff was "unable to maintain

---

[10] Even if substantial evidence supports Plaintiff's interpretation of the evidence, this does not establish error. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

[11] The ALJ cited these records in her opinion as "32F:11, 14, 17, 20, 23, 26." (Doc. 16-3 at 48).

a full time or part time job at this time due to epileptic seizers [sic] and chronic back pain," (Doc. 16-8 at 194), his medical records from the visits cited by the ALJ indicate that Plaintiff's seizures and back pain were controlled with medication, (Doc. 16-10 at 47, 53, 56). Indeed, even after Plaintiff told Dr. Hayashi at a visit on October 12, 2015 that she was "doing 'great,'" (Doc. 16-10 at 45), Dr. Hayashi filled out disability paperwork that same date opining that Plaintiff had severe limitations, (*id.* at 20, 47). Further, the ALJ acknowledged that although there was "a record of a visit when the claimant was weak and wobbly," Plaintiff's symptoms at that visit "appear[ed] to be an isolated recorded event when on medication for her impairments." (Doc. 16-3 at 49). These inconsistencies between Dr. Hayashi's opinions and Plaintiff's medical records constitute "specific and legitimate" reasons supported by substantial evidence for affording Dr. Hayashi's opinions little weight. *See Valentine*, 574 F.3d at 692–93; *Tommasetti*, 533 F.3d at 1041.

Next, the ALJ afforded little weight to Dr. Hayashi's statements because she found that the records indicated that his opinions "may unjustifiably rely more on subjective reporting rather than objective diagnostic and clinical evidence." (Doc. 16-3 at 48). Plaintiff, however, contends that there is no evidence demonstrating that Dr. Hayashi unduly relied on Plaintiff's complaints of pain. (Doc. 24 at 21; Doc. 31 at 6). On this point, the Court agrees with Plaintiff. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Tommasetti*, 533 F.3d at 1041 (holding that the ALJ's rejection of the treating physician's opinion was supported by specific and legitimate reasons where the ALJ stated that the treating physician's assessment was essentially a "rehashing of claimant's own statements" and was therefore undermined by the ALJ's finding that the claimant was not credible)). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations," there is no basis for rejecting that opinion on these grounds. *Id.*

Although the ALJ cites Plaintiff's frequent reports of "severe pain," the ALJ

provides no evidence that Dr. Hayashi's opinions were based more heavily on these subjective reports than on Dr. Hayashi's observations and assessments. (Doc. 16-3 at 48 (citing Doc. 16-10 at 42, 47, 49, 66)). Accordingly, the Court finds that substantial evidence does not support the ALJ's conclusion that Dr. Hayashi relied more on Plaintiff's subjective complaints than on objective diagnostic and clinical evidence. *See Ghanim*, 763 F.3d at 1162. Nevertheless, because the ALJ provided other, specific and legitimate reasons based on substantial evidence for discounting Dr. Hayashi's opinions, this error is harmless. *See Stout*, 454 F.3d at 1054–55; *DeBerry*, 352 F. App'x at 176; *Bartels*, 2016 WL 768851, at *4.

The next reason the ALJ offers for discounting the opinions of Dr. Hayashi is that "the opinions are on forms with checked boxes and there is no explanation for the degree of limitations." (Doc. 16-3 at 48). Plaintiff claims that this is error because Dr. Hayashi supported his opinions with numerous records and findings. (Doc. 24 at 21). In support, Plaintiff cites *Garrison v. Colvin*, a Ninth Circuit case holding that an ALJ erred by failing "to recognize that the opinions expressed in check-box form in the . . . Questionnaire were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013.[12] Nevertheless, the ALJ here found that Dr. Hayashi's opinions were unsupported, as she specifically noted that "[c]linical findings in the doctor's records [] do not support the severe degree of limitations in the opinions." (Doc. 16-3 at 48–49). When evaluating conflicting medical opinions, "an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Batson*,

---

[12] In the portion of her Opening Brief arguing that the ALJ erred in discounting Dr. Hayashi's opinion based on its check-box form, Plaintiff attributes the following quotation to *Reddick v. Chater*, 157 F.3d 715, 725–26 (9th Cir. 1998): "In the absence of impropriety in rendering medical judgment, the discounting of the treating physician opinion based on a check box form or claimed undue reliance on reported symptoms is legal error." (*See* Doc. 24 at 21–22). However, *Reddick v. Chater* does not say this, or even discuss opinions in check-box form at all.

- 22 -

359 F.3d at 1195 (holding that the ALJ did not err in discounting the opinions of the claimant's treating physicians for being in checklist form and unsupported by substantive medical findings because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole") (citing *Matney*, 981 F.2d at 1019).

Not only did the ALJ find that Dr. Hayashi's clinical findings did not support the severe degree of limitations in his opinions, but cursory review of Dr. Hayashi's opinions reveals that they are brief and do not contain any explanation for the degree of limitations imposed. (*See* Doc. 16-8 at 194; Doc. 16-10 at 20–21, 69–70). Opinions given in formats which provide little opportunity for the physician to explain the bases of his or her opinion are entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ permissibly rejected three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"). Following *Tonapetyan*, *Batson*, and *Crane*, the ALJ did not err by discounting Dr. Hayashi's opinions for being on forms with checked boxes lacking explanation and support for the degree of limitations imposed. *See Tonapetyan*, 242 F.3d at 1149; *Batson*, 359 F.3d at 1195.

In assigning little weight to the opinions of Dr. Hayashi, the ALJ also noted that Dr. Hayashi is a general practitioner rather than a specialist. (Doc. 16-3 at 49). Although specialization is one of several factors ALJs must consider when evaluating medical opinion evidence, 20 C.F.R. § 404.1527(c)(5), "the Commissioner concedes that this factor, standing alone, would not be a sufficient basis for discounting Dr. Hayashi's opinion," (Doc. 25 at 11–12). Notwithstanding, the ALJ provided other, specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Hayashi.

Finally, the ALJ discounted Dr. Hayashi's opinions because she found the limitations he imposed "inconsistent with an individual who can travel for two weeks in Hawaii and two weeks in Alaska." (Doc. 16-3 at 49). Plaintiff contends this rationale for

giving little weight to Dr. Hayashi's opinions is erroneous because the ALJ did not cite any cruise-related activities which undermine Dr. Hayashi's opinions. (Doc. 24 at 22). However, Plaintiff's argument is irrelevant, as it is clear from the ALJ's opinion that traveling for an extended period of time is itself the activity the ALJ believes is inconsistent with Dr. Hayashi's opinions limiting Plaintiff to less than sedentary work. (*See* Doc. 16-3 at 48–49). Notably, an ALJ may discount opinion evidence when a physician assesses limitations that appear to be inconsistent with the claimant's level of activity. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). The Court finds that the ALJ reasonably concluded that traveling for an extended period of time is inconsistent with the significant limitations Dr. Hayashi assessed in his opinions. Therefore, the Court upholds the ALJ's analysis, as this constitutes a "specific and legitimate" reason supported by substantial evidence for discounting Dr. Hayashi's opinions.

In conclusion, the ALJ provided specific and legitimate reasons based on substantial evidence for discounting Dr. Hayashi's opinions. As a result, the ALJ did not err in affording Dr. Hayashi's statements little weight.

### 2. The Opinion of Dr. Hagevik

Plaintiff contends that the ALJ erred in giving little weight to the opinion of treating neurologist Dr. Hagevik. (Doc. 24 at 22). However, the ALJ set forth several specific and legitimate reasons supported by substantial evidence for discounting Dr. Hagevik's opinion.

First, the ALJ stated that Dr. Hagevik's opinion that Plaintiff "would be capable of less than sedentary work, could not perform work eight hours a day, five days a week on a consistent basis, and would miss more than six days a month of work," is "not consistent with the consistently relatively unremarkable clinical findings in the doctor's own records." (Doc. 16-3 at 49). Although Plaintiff claims that Dr. Hagevik's medical findings were not

unremarkable and there was no conflict with opined to limitations, (Doc. 31 at 9), the Court disagrees.[13] Rather, in contrast to the severe degree of limitations set forth by Dr. Hagevik, the ALJ cited medical records from Plaintiff's visits with Dr. Hagevik which indicate that Plaintiff's electroencephalogram ("EEG") was normal, she was in no acute distress, she had good strength in both upper and lower extremities, she did not have a tremor, and noted that Dr. Hagevik suspected that "many of her symptoms were caused by stopping her medications." (Doc. 16-8 at 187, 189–90). The inconsistencies between the limitations set forth in Dr. Hagevik's opinion and Plaintiff's medical records constitute "specific and legitimate" reasons supported by substantial evidence for affording Dr. Hagevik's opinion little weight. *See Valentine*, 574 F.3d at 692–93; *Tommasetti*, 533 F.3d at 1041.

Second, the ALJ noted that Dr. Hagevik's opinion consisted of check-box forms that did not explain the basis for his conclusions about the severity of Plaintiff's limitations. (Doc. 16-3 at 49). As Plaintiff makes no argument that it was improper to reject Dr. Hagevik's opinion based on their format, (*see* Doc. 24; Doc. 31),[14] the Court considers any argument on this point waived. *See Bray*, 554 F.3d at 1226 n. 7; *Arpin*, 261 F.3d at 919 ("issues which are not specifically and distinctly argued and raised in a party's opening brief are waived") (citation omitted). Even so, the ALJ did not err by discounting Dr. Hagevik's opinion for being on forms with checked boxes lacking explanation and support for the degree of limitations imposed. *See Tonapetyan*, 242 F.3d at 1149; *Batson*, 359 F.3d at 1195.

Third, the ALJ determined that Dr. Hagevik's opinion containing severe limitations

---

[13] Plaintiff also argues that the ALJ erred in finding Dr. Hagevik's opinion inconsistent with his clinical findings because Dr. Hagevik's "physical examinations do not contain musculoskeletal evaluations and are more concerned with neurological findings," and because "some of the conditions treated by Dr. Hagevik, such as seizure disorder, are not typically associated with much in the way of observable physical clinical findings." (Doc. 24 at 23). Nevertheless, Plaintiff's medical records reveal that Dr. Hagevik made musculoskeletal evaluations during his examinations of Plaintiff and recorded his physical clinical findings. (*See* Doc. 16-8 at 189).

[14] Plaintiff merely points out that that the ALJ "rejected the opinion of treating neurologist Andre Hagevik, M.D. with largely identical and similar rationale to that employed in rejecting the opinion of Dr. Hayashi (Tr. 48), including the checkbox format of the opinions . . . ." (Doc. 24 at 22).

essentially restricting Plaintiff "to almost constant bed rest" were inconsistent with Plaintiff's ability to drive independently, travel for two weeks at a time to destinations such as Hawaii and Alaska, and go on cruises. (Doc. 16-3 at 49). As noted *supra*, an ALJ may discount opinion evidence when a physician assesses limitations that appear to be inconsistent with the claimant's level of activity. *See Rollins*, 261 F.3d at 856; *Morgan*, 169 F.3d at 600–02. Although Plaintiff contends that Dr. Hagevik's limitations do not correlate to a bedridden individual, but rather are "consistent with an ability to work less than 4 hours a day with frequent breaks, and with occasional use of the hands," (Doc. 31 at 7–8), this interpretation is incompatible with Dr. Hagevik's stated opinion that Plaintiff is "unable to maintain employment[,]" (Doc. 16-8 at 192). Moreover, the ALJ reasonably concluded that traveling for an extended period of time, driving independently, and going on cruises are activities inconsistent with the severe, disabling limitations Dr. Hagevik assessed in his opinions. *See generally Tommasetti*, 533 F.3d at 1040 (holding that the ALJ did not err in discounting the claimant's testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister because the "ALJ could properly infer from this fact that [the claimant] was not as physically limited as he purported to be") (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the [administrative] law judge is entitled to draw inferences logically flowing from the evidence.")). Therefore, the Court upholds the ALJ's analysis, as this constitutes a "specific and legitimate" reason supported by substantial evidence for discounting Dr. Hagevik's opinion.

Finally, the ALJ also stated that she considered the brief treatment relationship between Plaintiff and Dr. Hagevik when affording little weight to Dr. Hagevik's opinion. (Doc. 16-3 at 49). Although Plaintiff argues that the length of Dr. Hagevik's treatment relationship is not a basis for discounting his opinion, the Ninth Circuit has made clear that the "ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161 (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007);

20 C.F.R. § 404.1527(c)). These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "[n]ature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). Therefore, the ALJ did not err in considering the length of the treatment relationship between Dr. Hagevik and Plaintiff.

In conclusion, the ALJ provided specific and legitimate reasons based on substantial evidence for discounting Dr. Hagevik's opinion. As a result, the ALJ did not err in affording Dr. Hagevik's statements little weight.

### 3. The Opinion of Dr. McClain

Plaintiff also contends that the ALJ erred in giving very little weight to the opinion of treating source Dr. McClain, who opined that Plaintiff would never be able to work. (Doc. 24 at 19, 23). However, the ALJ set forth specific and legitimate reasons supported by substantial evidence for discounting Dr. McClain's opinion.

As a preliminary matter, the ALJ first noted how Dr. McClain himself wrote that he did not assess patients for work-related activities. (Doc. 16-3 at 49 (citing Doc. 16-9 at 194)). Rather, Dr. McClain "refer[s] patients to a physical therapy facility" for an evaluation of their total body conditioning. (Doc. 16-9 at 194). Similarly, the ALJ also stated that Dr. McClain's opinion letter is conclusory and "does not provide a function-by-function analysis" of what Plaintiff can do. (Doc. 16-3 at 49; *see* Doc. 16-9 at 194). As these observations by the ALJ make clear, Dr. McClain's opinion fails to make any functional limitations. Where a treating physician's opinion does not contain any functional limitations, the ALJ is not required to provide reasons for rejecting that opinion. *Smith v. Berryhill*, 708 F. App'x 402, 403 (9th Cir. 2017) (holding that the ALJ "did not err by not providing reasons to reject Dr. Ashcraft's letter because the letter contained no opinions as to [the claimant's] functional limitations" and that the ALJ "properly gave little weight to Dr. Schroeder's opinion because it failed to provide specific functional limitations"); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (concluding that the ALJ did not err by not providing reasons to reject a treating physician's report when

that report contained no functional limitations).[15] Even so, the ALJ provided specific and legitimate reasons supported by substantial evidence for giving very little weight to Dr. McClain's opinion.

First, the ALJ discounted Dr. McClain's opinion because it was inconsistent with the unremarkable diagnostic imaging results and with the minimal clinical findings made by Dr. Briggs during the consultative examination. (Doc. 16-3 at 49). Inconsistency between a physician's opinion and objective medical findings constitutes a "specific and legitimate reason" for rejecting the opinion of a treating physician. *See Valentine*, 574 F.3d at 692–93; *Tommasetti*, 533 F.3d at 1041. Nevertheless, Plaintiff claims that inconsistency with the opinion of Dr. Briggs does not justify the rejection of Dr. McClain's opinion because Dr. Brigg's opinion was itself unsupported by substantial evidence and given "little weight." (Doc. 24 at 23; Doc. 31 at 9 (citing Doc. 16-3 at 48–49)). Notably, however, the ALJ did not write that she was discounting Dr. McClain's opinion because it was inconsistent with Dr. Brigg's *opinion*, but rather because it was inconsistent with the "minimal clinical findings" made by Dr. Briggs during the consultative examination. (Doc. 16-3 at 49). Although the ALJ did afford little weight to Dr. Brigg's opinion that Plaintiff did not have any limitations in physical exertion because she found that there were indications that Plaintiff would at least have some degree of limitation, the ALJ stated that the "largely normal clinical examination" completed by Dr. Briggs was "extremely persuasive in finding the claimant is limited to the residual functional capacity reached herein." (*Id.* at 48).

In addition to finding Dr. McClain's opinion inconsistent with Dr. Brigg's clinical findings, the ALJ also found Dr. McClain's opinion inconsistent with the unremarkable

---

[15] In her Reply, Plaintiff claims error with Defendant's statement in its responsive brief that the ALJ was "under no obligation to consider" Dr. McClain's opinion. (Doc. 31 at 9 (citing Doc. 25 at 13)). Although Plaintiff takes issue with Defendant's word choice, it is clear from Ninth Circuit precedent that an ALJ need not provide specific reasons for rejecting the opinion of a physician who fails to make any functional limitations. *Turner*, 613 F.3d at 1223; *Smith*, 708 F. App'x at 403. Further, to the extent Plaintiff makes this argument in an effort to insinuate that the ALJ failed to consider Dr. McClain's opinion, this argument fails. Rather, it is clear that the ALJ considered the opinion in compliance with 20 C.F.R. § 404.1527(c) and (d)(2), as the ALJ provided reasons to discount the opinion and weighed it in Plaintiff's RFC assessment. (*See* Doc. 16-3 at 49–50).

- 28 -

diagnostic imaging results consisting of Plaintiff's MRI's. (*Id.* at 49 (citing Doc. 16-10 at 29–35)). Further, the ALJ found Dr. McClain's opinion that Plaintiff will need knee surgery inconsistent with his own treatment records, which the ALJ noted did not reflect that Plaintiff was a surgical candidate but instead suggested only conservative treatment.[16] (Doc. 16-3 at 49). These inconsistencies constitute specific and legitimate reasons supported by substantial evidence for affording Dr. McClain's opinion very little weight. *See Valentine*, 574 F.3d at 692–93; *Tommasetti*, 533 F.3d at 1041.

Second, the ALJ noted that Dr. McClain had only been treating Plaintiff since March 2015, which the ALJ considered "not a remarkably long treating relationship." (Doc. 16-3 at 49). As discussed *supra*, the ALJ is required to consider the length of the treatment relationship between the physician and the claimant in determining how much weight to afford the treating physician's medical opinion. *See Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1527(c)(2)(i). Although Plaintiff argues in her Reply that the ALJ erred in finding that Dr. McClain had a limited treatment relationship with Plaintiff because Plaintiff saw Dr. McClain on a monthly basis, (Doc. 31 at 10), Plaintiff waived this new argument by failing to raise this issue in her Opening Brief. *See Bray*, 554 F.3d at 1226 n. 7; *Thrasher v. Colvin*, 611 F. App'x 915, 918 (9th Cir. 2015) (By raising them only in her reply brief, claimant waived two new arguments that were not raised in her opening brief).

Third, the ALJ stated that Dr. McClain's conclusion that Plaintiff would never be able to work infringed on an issue reserved to the Commissioner, and "as such is not afforded any special significance." (Doc. 16-3 at 49). Notably, "a determination of a

---

[16] Plaintiff contends that the ALJ incorrectly states that Plaintiff is not a surgical candidate and that Dr. McClain only suggested conservative treatment. (Doc. 24 at 23–24). Although Plaintiff argues that pain management specialists such as Dr. McClain do not typically assess surgical candidacy, (Doc. 24 at 24), it remains that Dr. McClain assessed Plaintiff's surgical candidacy here, but yet none of the medical records provide any support for his opinion that Plaintiff required knee surgery. (*See* Doc. 16-9 at 142–53; Doc. 16-10 at 29–35). Further, Plaintiff asserts that the ALJ incorrectly determined that Dr. McClain's records suggested only conservative treatment despite the fact that Dr. McClain performed lumbar facet injections and sacroiliac joint injections, "which are by nature not a conservative treatment." (Doc. 24 at 24 (citing Doc. 16-10 at 36)). However, these injections are not procedures on the knee, and it is the Court's understanding that the ALJ's references to Plaintiff's surgical candidacy and conservative treatment are in regards to Dr. McClain's opinion that Plaintiff will need knee surgery. (Doc. 16-3 at 49).

claimant's ultimate disability is reserved to the Commissioner, and . . . a physician's opinion on the matter is not entitled to special significance." *Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008); *see also Tonapetyan*, 242 F.3d at 1148 ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Accordingly, the ALJ did not err in noting that Dr. McClain's conclusion that Plaintiff would never work was "not afforded any special significance." *See Boardman*, 286 F. App'x at 399.

In conclusion, the ALJ provided specific and legitimate reasons based on substantial evidence for discounting Dr. McClain's opinions. As a result, the ALJ did not err in affording Dr. McClain's statements very little weight.

### C.    Whether the ALJ Improperly Utilized the Opinions of State Agency Consulting Physicians to Reject Plaintiff's Evidence of Disability

Prior to her hearing before the ALJ, Plaintiff submitted an Objection to Records, Subpoena Request, and Interrogatory Request in which she objected to the admission of the State non-examining and examining consulting physician opinions and asked that, "if they be admitted, a subpoena be issued to compel the author's attendance at a deposition or hearing." (Doc. 16-7 at 87–90). The ALJ denied Plaintiff's request that these medical consultants and examiners be compelled to testify. (Doc. 16-3 at 35–36). As a result, Plaintiff asserts that the ALJ erred in using the opinions of State agency consulting physicians as "substantial evidence" to reject Plaintiff's evidence of disability because the ALJ improperly denied her subpoena request. (Doc. 24 at 24–25; Doc. 31 at 10–11).

Despite Plaintiff's claim, however, there no absolute right to subpoena witnesses in a disability hearing. *See Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983); 20 C.F.R. § 404.950(d)(1) ("*When it is reasonably necessary* for the full presentation of a case, an administrative law judge or a member of the Appeals Council *may*, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony

of witnesses . . . .") (emphasis added). "A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts. The ALJ has discretion to decide when cross-examination is warranted." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (internal citation omitted); *see also Calvin v. Chater*, 73 F.3d 87, 92–93 (6th Cir. 1996) (holding that there is no absolute right to the issuance of a subpoena absent some "showing of an actual need for cross examination.").

Plaintiff's subpoena request here did not demonstrate that cross-examination of the State's consulting physicians was reasonably necessary for the full presentation of her case or show any such actual, specific need. Rather, Plaintiff's request was directed at all of the state physicians generally rather than any specific physician, and only cites generalized concerns about the review process:

> The basis for such subpoena is that it has come to our attention that the consultants retained by the State agency (examining and non-examining) often lack the specialty pertinent to the impairment suffered by the claimant whose file is being reviewed, will sometimes have a non-medical reviewer's findings copied or incorporated into the RFC assessment, and will rarely, if ever, review a substantial number of treating source records. In fact, we have been told that the reviewers will frequently offer an opinion based on a record review that contains less than five treatment notes. If an examination is performed, the consultants often spend less than 15-20 minutes examining the claimant.

(Doc. 16-7 at 88). As these generalized concerns could apply to any social security hearing, the ALJ did not err in denying Plaintiff's subpoena request.

Moreover, "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan*, 169 F.3d at 600 (citation omitted); *see also Andrews*, 53 F.3d at 1041 ("[W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor

need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). Although Plaintiff does not challenge the ALJ's evaluation of any of the opinions of the State consulting physicians specifically, the ALJ assigned the greatest weight to the opinion of non-examining physician Dr. Ostroski that Plaintiff could perform a reduced range of light work after determining that his opinion was consistent with the record evidence. (*See* Doc. 16-3 at 47–48). In support, the ALJ noted that any greater restriction was not supported by the records, citing Plaintiff's vacations to Hawaii and Alaska "despite the alleged presence of disabling physical symptoms," Plaintiff's unremarkable consultative examination with Dr. Briggs, and largely normal clinical findings. (*Id.*). As the ALJ found Dr. Ostroski's opinion to be consistent with the record as a whole, the ALJ was permitted to assign significant weight to his opinion despite the fact that he was a non-examining physician. Accordingly, the Court finds that Plaintiff's argument that the ALJ improperly utilized the opinions of State agency consulting physicians to reject Plaintiff's evidence of disability fails.

### D.     Whether the ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ erred in weighing Plaintiff's symptom testimony because the reasons provided by the ALJ for discounting Plaintiff's subjective complaints were not supported by clear and convincing evidence. (Doc. 24 at 25–26; Doc. 31 at 11).

When assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of his symptoms, the ALJ must engage in a two-step analysis. *Molina*, 674 F.3d at 1112. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the

degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84; *Lingenfelter*, 504 F.3d at 1036.

To make specific findings, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ's credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Although the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. 16-3 at 44). In specific, the ALJ pointed to clear and convincing reasons for discounting Plaintiff's symptom testimony.[17] (*See id.* at 43–46).

---

[17] Defendant's Response brief sets forth an additional reason that the ALJ presented for discounting Plaintiff's subjective complaints, (Doc. 25 at 20), to which Plaintiff objected in her Reply, (Doc. 31 at 13). Defendant alleges that the ALJ reasonably discounted Plaintiff's subjective complaints because she worked from 2000 through 2012 with the same impairments she claims were disabling during that same period, including lupus. (Doc. 25 at 20 (citing Doc. 16-3 at 46)). However, because Plaintiff only alleges disability beginning on January 27, 2014, Plaintiff's ability to work from 2000 through 2012 does not bear on the period in question. Nevertheless, to the extent this reason provided by the ALJ in discounting Plaintiff's testimony is not legally sufficient, the ALJ's reliance on this reason is harmless error. *See Batson*, 359 F.3d at 1195–97 (concluding that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but finding the error harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record); *Tommasetti*, 533 F.3d at 1039 (upholding the ALJ's adverse credibility determination because the "ALJ provided several permissible reasons"). On this record, the ALJ's error in setting forth this reason for discounting Plaintiff's subjective complaints does not negate

First, the ALJ discounted Plaintiff's subjective complaints because her condition improved and was controlled by treatment. (*See id.* at 43, 46). "Impairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). The ALJ noted how Plaintiff's neurologist attributed Plaintiff's exacerbation in seizure symptoms to Plaintiff's failure to take the medication. (Doc. 16-3 at 44 (citing Doc. 16-8 at 190)). Based on this neurologist's comments, the ALJ inferred[18] that Plaintiff's symptoms would be well-controlled if she took her medication as prescribed, and thus did not "require a finding of greater limitations in [Plaintiff's] residual functional capacity." (*Id.*). Further, the ALJ noted that Plaintiff reported doing "great" and told her physicians that "her medications enabled her to perform her activities of daily living, which speaks to the efficacy of conservative medical care in allowing the claimant a level of physical exertion." (*Id.* at 47 (citing Doc. 16-8 at 40, Doc. 16-10 at 45)). These statements and treatment notes demonstrating that Plaintiff's symptoms were reasonably controlled with treatment undermine Plaintiff's claims of disabling limitations. *See Warre*, 439 F.3d at 1006. Moreover, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).

Second, the ALJ discounted Plaintiff's subjective complaints because they were inconsistent with her activity level, which included going on a cruise, spending weeks vacationing in Hawaii and Alaska, and completing activities of daily living. (Doc. 16-3 at 40, 46–47). An ALJ may discount a claimant's symptom testimony when it is inconsistent

the validity of the ALJ's adverse credibility findings. *Batson*, 359 F.3d at 1197. The remaining valid reasons supporting the ALJ's determination are specific findings related to Plaintiff's ability to perform vocational functions, and "they clearly demonstrate that to the extent the ALJ found [Plaintiff's] testimony incredible, the ALJ did not do so arbitrarily." *Carmickle*, 533 F.3d at 1163 (upholding the ALJ's adverse credibility finding because the ALJ's error in setting forth legally insufficient reasons for discounting the claimant's testimony was ultimately harmless).

[18] ALJs are permitted to make reasonable inferences from evidence in the record. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the [administrative] law judge is entitled to draw inferences logically flowing from the evidence.").

with the claimant's activities. *See Rollins*, 261 F.3d at 857 (holding that the ALJ properly discounted the claimant's pain testimony because it was inconsistent with her own testimony about her daily activities); *Smolen*, 80 F.3d at 1284 n. 7 ("With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting."). Here, the ALJ reasonably determined that Plaintiff's "travel is not necessarily consistent with allegations of disabling cognitive and social impairments and does not weigh in favor of the claimant's application as it suggests a level of function consistent with work related tasks."[19] (Doc. 16-3 at 40); *see Tommasetti*, 533 F.3d at 1040 (holding that the ALJ did not err in discounting the claimant's testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister because the "ALJ could properly infer from this fact that [the claimant] was not as physicially limited as he purported to be") (citation omitted). This inconsistency between Plaintiff's symptom testimony and activity level weighs on Plaintiff's believability and constitutes a clear and convincing reason for discounting her testimony regarding the severity of her symptoms. *See Molina*, 674 F.3d at 1113 (affirming ALJ's decision to discount claimant's testimony based, in part, on inconsistencies with her daily activities).

Third, the ALJ discounted Plaintiff's symptom testimony because it was inconsistent with her own treatment records. (Doc. 16-3 at 44–45). "While subjective pain

---

[19] Plaintiff, again, takes offense with the ALJ's discussion of Plaintiff's ability to go on a cruise as inconsistent with her disabling symptoms and limitations, claiming that it was "not accompanied by any analysis whatsoever" and that the "ALJ simply asserts that [Plaintiff's daily activities] are inconsistent without considering accommodations required and [Plaintiff's] actual activities while on the cruise ships." (Doc. 24 at 26). No matter how many times Plaintiff objects to the ALJ's mentioning of Plaintiff's cruise vacation, it remains that extended vacations can undermine a claimant's symptom testimony, *Tommasetti*, 533 F.3d at 1040, and the ALJ reasonably came to that conclusion here. (*See* Doc. 16-3 at 40, 46–47). Further, in her Reply brief, Plaintiff states that "Defendant does not dispute that the ALJ failed to cite to any specific activity that was inconsistent with any of Benear's reported symptoms." (Doc. 31 at 11). This statement is incorrect, as Plaintiff herself recognized that the ALJ found Plaintiff's cruise travel inconsistent with Plaintiff's subjective symptom testimony in her Opening Brief, (*see* Doc. 24 at 26), and Defendant's Response explicitly noted that the ALJ cited Plaintiff's cruise and travel to both Hawaii and Alaska as activities incompatible with her subjective complaints, (*see* Doc. 25 at 17).

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857. In this case, the ALJ pointed to evidence in the record undercutting Plaintiff's allegations about the seriousness of her conditions, including her own statements in the record that she was doing "great,"[20] (Doc. 16-10 at 45), and objective clinical findings, (Doc. 16-3 at 44–45). For example, the ALJ noted that although diagnostic imaging results confirmed the presence of some "mild" degenerative changes in Plaintiff's back and knee likely to cause some pain and restrictions, these MRI's and radiographs failed to show any evidence of "any severe stenosis, nerve root impingement or foraminal narrowing" to cause the extent of pain and degree of limitations Plaintiff alleged. (*Id.* at 44–45).[21] *See, e.g.*, *Pruitt v. Comm'r of Soc. Sec.*, 612 F. App'x 891, 893 (9th Cir. 2015) (holding that the ALJ provided a clear and convincing reason to reject the claimant's allegation about her ability to sit long enough to work where the claimant's account of her alleged limitation was inconsistent with the medical record, including an x-ray demonstrating only mild degenerative changes and no acute abnormalities).

Further, the ALJ pointed to "unremarkable clinical signs that would not support disabling limitations" in Plaintiff's RFC capacity, including the lack of any cervical spinous process tenderness, step off tenderness, severe restriction in range of motion, or

---

[20] Plaintiff tries to combat the ALJ's finding that her symptom testimony was unsupported by the medical evidence by stating that the notation in the record that she was feeling great "was limited to insomnia," and is combatted by other evidence at that visit, such as her telling the doctor she has a fractured arm and wrist and that her back hurt. (Doc. 31 at 13). However, there is no indication in the record that this comment was limited solely to insomnia. (*See* Doc. 16-10 at 45). Further, it remains that even with a hurting back and fractured arm, Plaintiff still told her physician she was doing "great." (Doc. 16-10 at 45).

[21] Plaintiff attempts to demonstrate that her symptom testimony was supported by the medical evidence by claiming that the "MRI's and the ALJ's summary of the MRI's include findings of foraminal stenosis and displacement of nerve roots" despite the ALJ's statement that objective imaging showed no evidence of "any severe stenosis, nerve root impingement or foraminal narrowing to cause the pain and restrictions alleged." (Doc. 31 at 12 (citing Doc. 16-3 at 43, 526)). However, the operative word in the ALJ's findings here is *severe*; Plaintiff's diagnostic imaging results indicate that Plaintiff had only mild spinal stenosis, mild to moderate foraminal stenosis, and slight displacement of nerve roots. (Doc. 16-9 at 21).

spinous process tenderness in the lumbar spine, as well as her normal gait, extremity strength, and range of motion at various doctor's visits. (*Id.* at 45). Moreover, the ALJ noted that the "radiographic and physical exam notes fail to document potentially physically impairing conditions such as nerve root or spinal cord compromise, decreased sensation or strength in the extremities, electrodiagnostic evidence of radiculopathy, gait instability and/or spasticity consistent with her allegations." (*Id.*). Indeed, the ALJ said that it "has been noted that her pain was 'out of proportion to the findings.'" (*Id.* (citing Doc. 16-10 at 75)). Despite Plaintiff's complaints of hip pain, the ALJ found that radiographic evidence showed no significant findings. (*Id.*). In evaluating Plaintiff's lupus, the ALJ determined that the medical evidence did not objectively confirm the degree of limitation alleged. (*Id.* at 46). As Plaintiff's subjective complaints were contradicted by numerous objective tests, these inconsistencies constitute significant and substantial reasons to find Plaintiff's testimony less than completely credible. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (holding that the ALJ provided clear and convincing reasons for rejecting the claimant's testimony, including noting that the claimant's subjective complaints of knee pain were contradicted by various laboratory tests showing knee function within normal limits). Substantial evidence supports the ALJ's findings that Plaintiff's symptom testimony was inconsistent with her own treatment records.[22]

Fourth, the ALJ discounted Plaintiff's subjective complaints because Plaintiff made inconsistent statements which cast doubt upon the reliability of her subjective complaints. (Doc. 16-3 at 47). Inconsistent statements are specific and convincing reasons to discount a claimant's subjective complaints. *See Turner*, 613 F.3d at 1225; *Tonapetyan*, 242 F.3d at 1148. Here, the ALJ set forth multiple instances of inconsistent reporting by Plaintiff. (*See*

---

[22] Plaintiff argues that the ALJ mischaracterizes the objective evidence by overemphasizing Plaintiff's normal findings and omitting the abnormal findings, and points to examination findings and diagnostic imaging results which she believes support her subjective complaints. (Doc. 24 at 27–28). Although the record may contain a combination of negative and positive examination findings and diagnostic imaging results, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041–42 (citing *Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")). On this record, the ALJ reasonably discounted Plaintiff's subjective complaints because they were inconsistent with the record evidence.

16-3 at 47). For example, the ALJ noted that Plaintiff reported extreme side effects of medication at the hearing, but yet only listed mild side effects on her medications form, denied experiencing any side effects from medications in various treatment records, stated that her medications enabled her to work, and reported improved quality of life and pain reduction while on her medications.[23] (*Id.*). The ALJ also noted how Plaintiff reported to Dr. Mastikian that she did not tend to her personal hygiene, but yet arrived with her makeup done, wearing a black evening dress, and looked as if she had spent a significant amount of time on her appearance.[24] (*Id.* (citing Doc. 16-9 at 27)). Regardless of whether or not Plaintiff's inconsistent reporting was intentional, it nonetheless suggests that Plaintiff's subjective complaints were unreliable. *See Thomas*, 278 F.3d at 959 (holding that the ALJ gave specific, clear and convincing reasons supported by substantial evidence for discounting the claimant's testimony where the ALJ noted that the claimant denied any substance abuse on one occasion but later admitted to alcoholism and to smoking marijuana, and inferred "that this lack of candor carries over to her description of physical pain").

---

[23] In her attempt to show that these statements were not inconsistent, Plaintiff contends that the ALJ erred in citing examples from the record prior to Plaintiff's alleged onset date. (Doc. 24 at 26; Doc. 31 at 11–12). Although two of the referenced visits were in February 2012 and December 2013, prior to Plaintiff's alleged onset date of January 27, 2014, the ALJ also cited examples from after Plaintiff's onset date, including: July 2014 treatment records from Jewish Family & Children's services showing that Plaintiff denied experiencing any side effects from medications, a May 2016 report by Plaintiff that medications helped reduce her level of pain, and Plaintiff's own hearing testimony in April 2016. (Doc. 16-3 at 47 (citing Doc. 16-3 at 67–68; Doc. 16-8 at 43; Doc. 16-9 at 46)). Even if there is the possibility of drawing two inconsistent conclusions from this evidence, this does not prevent the ALJ's findings from being supported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Here, the evidence supports the ALJ's conclusion and, accordingly, we must defer to the ALJ's decision. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews*, 53 F.3d at 1039–40).

[24] In an attempt to demonstrate that her statements to Dr. Mastikian were not inconsistent, Plaintiff argues that Dr. Mastikian's report itself contains conflicting information about Plaintiff's appearance because he notes in one section that she wore a black evening dress and makeup, but later in the evaluation stated that Plaintiff was dressed appropriately and had adequate grooming. (Doc. 24 at 26; Doc. 31 at 12 (citing Doc. 16-9 at 27–28)). Despite Plaintiff's attempt to characterize these statements as indicative of a lack of reliability in the report of Dr. Mastikian, (Doc. 31 at 12), these statements actually show that Plaintiff had the ability to attend to her hygiene despite the fact that she told Dr. Mastikian that she does not tend to her hygiene nor have any ability to do her hygiene. (*See* Doc. 16-9 at 27).

Ultimately, the ALJ found that Plaintiff's "allegations of greater pain, fatigue and functional limitations are not supported to the extent alleged." (Doc. 16-3 at 44). As the ALJ pointed to clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, the ALJ did not err in determining that the degree of symptomology reported by Plaintiff might not be entirely reliable.

## IV.   CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 18th day of January, 2019.

James A. Teilborg
Senior United States District Judge